IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: BOYD VEIGEL, P.C., | § § § § § § § § § § § § § § § | |
| Debtor | | |
| CHARLES WATSON, | | |
| Appellant, | | Case No. 4:12-cv-368 |
| v. | | |
| LINDA PAYNE, | | |
| Appellee. | | |

**MEMORANDUM OPINION AND ORDER AFFIRMING
APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION
(CASE NUMBER 09-43943-R)**

The Appellant, Charles D. Watson, appeals the bankruptcy court's May 31, 2012 "Order Granting Motion for Court to Direct Trustee to Turnover All Recordings Between Debtor and Charles D. Watson to the Los Angeles Police Department and All Legal Files Between Debtor and Charles D. Watson to Charles D. Watson c/o of His Nephew Brian Patton." In the order, the bankruptcy court directed the Trustee, Linda Payne, to turn over all tape recordings between the Debtor and Watson to the Los Angeles Police Department and to turn over all other legal materials between the Debtor and Watson to Watson in care of Watson's attorney, Kendrick Jan. Having reviewed the bankruptcy court's order and the parties' briefs, the court finds that the bankruptcy

court's order should be affirmed.

## BACKGROUND

On August 9, 1969, Sharon Tate and several other individuals were murdered in California in a crime commonly referred to as the "Tate-La Bianca Murders." Charles D. Watson (hereinafter "Watson") was arrested in McKinney, Texas on November 30, 1969 for his role in the murders. Watson retained Mr. Bill Boyd of Boyd, Veigel & Gay to represent him in connection with the murder charges. On December 3, 1969, Watson executed a document styled "Contract of Employment of Boyd, Veigel & Gay." The pertinent portions of the contract are as follows:

NOW THEREFORE KNOW ALL MEN BY THESE PRESENTS that:

1. I hereby turn the defense of my case or cases over to BOYD, VEIGEL & GAY and employ them as principal counsel and leave the matter of the association of any other attorneys to their sound discretion.

2. I hereby authorize BOYD, VEIGEL & GAY to represent me in any and all matters pertaining to me, my case, my defense, my rights and my property.

3. I hereby agree to pay the law firm of BOYD, VEIGEL & GAY reasonable attorney's fees and reimbursement for all actual expense incurred in my case or cases.

_____

7. I hereby transfer and assign one half of all my property of every kind and character including any money, compensation or other thing of value which I might receive as direct or indirect payment or royalty from any newspaper, magazine, television or radio station or other individual or companies for any statements, stories, interviews, pictures, tapes or recordings to BOYD, VEIGEL & GAY, 218 E. Louisiana Street, McKinney, Texas.

8. I further transfer and assign the remaining one half or so much of same as may be necessary of said property to BOYD, VEIGEL & GAY to reimburse them for any expenses such as travel, lodging, meals, etc. that they may incur as a result of counseling and advising with me or representing me in Court.

While representing Watson, Mr. Boyd recorded discussions between Watson and himself. The recorded conversations are contained on eight cassette tapes. Mr. Boyd subsequently sold a copy of the cassette tapes to Chaplain Raymond G. Hoekstra with the International Prison Ministries for $49,000 for partial payment of Watson's legal fees. The cassette tapes formed, in part, the basis of Chaplain Hoekstra's book, "Will You Die for Me? The Man Who Killed for Charles Manson Tells His Own Story: Tex Watson as told to Chaplain Ray."

Presumably prior to Mr. Boyd releasing the cassette tapes to Chaplain Hoekstra, Watson executed a "Waiver of Attorney-Client Privilege." The waiver, which was signed by Watson in September 1976, provides as follows:

> I, CHARLES DENTON WATSON, request that my attorney, Bill Boyd, cooperate fully with Chaplain Raymond G. Hoekstra, and/or any authors or publishers selected by him in cooperation with the book on my life. I understand the attorney-client privilege and agree to waive the same as to the release by my attorney, Bill Boyd, of any information obtained by him from me or any other source during his representation of me.

Mr. Boyd passed away on August 29, 2009. On December 14, 2009, the law firm of Boyd Veigel, P.C. filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Texas. Linda Payne (hereinafter "Payne") was appointed as the trustee for the firm's bankruptcy estate. As the trustee for the firm, Payne came into possession of the cassette tapes as well as two boxes of paper files concerning Watson.[1]

Upon learning that Payne was in possession of the cassette tapes, the Los Angeles Police Department (hereinafter "LAPD") sent a letter to Payne on March 19, 2012 requesting the original cassette tapes. Thereafter, Payne filed a motion with the bankruptcy court on April 27, 2012. Payne

---

[1] The paper files are not at issue on appeal.

sought an order from the court directing her to turn over the cassette tapes to the LAPD. The bankruptcy court conducted a hearing on Payne's motion on May 29, 2012. At the hearing, Watson's counsel objected to Payne turning over the cassette tapes to the LAPD, asserting the cassette tapes were subject to the attorney/client privilege. Watson's counsel further contended that the waiver was limited to Chaplain Hoekstra and/or any authors or publishers selected by Chaplain Hoekstra in cooperation with the book on Watson's life.

At the conclusion of the hearing, the bankruptcy court held as follows:

> . . . The burden of proof to establish the existence of the attorney/client privilege rests on the party asserting the privilege. *See, e.g., In re Santa Fe International Corp.*, 272 F.3d 705, 5th Circuit, 2001; *U.S. v. Kelly*, 569 F.2d 928, 5th Circuit, 1978.
>
> The privilege claimant must establish both existence of the privilege and the absence of a waiver. *See, e.g., James v. Harris County Sheriff's Department* at 237 F.R.D. 606, Southern District of Texas, 2006.
>
> The Texas Rules of Evidence provide that the attorney/client privilege can be waived by the client. Rule 511 of the Texas Rules of Evidence provide the person upon whom these rules confer privilege against disclosure waives the privilege if the person or predecessor of the person while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privilege matter, unless such disclosure itself is privileged.
>
> The Court having reviewed the motion and the attachments thereto, including the written waiver of attorney/client privilege signed by Tex Watson in September 1976 and having considered the testimony of the Chapter 7 Trustee, finds that Tex Watson has failed to establish that the attorney/client privilege applies. The Court finds that Tex Watson as a matter of law expressly waived his attorney/client privilege as to the tapes in question. Therefore, the Court will grant the motion.

TR., May 29, 2012 Hearing, pp. 22-23. On May 31, 2012, the bankruptcy court ordered the Trustee to turn over the cassette tapes to the LAPD. On June 12, 2012, Watson appealed the bankruptcy court's May 31, 2012 order.

Prior to filing the notice of appeal, Watson filed a *pro se* motion with the bankruptcy court requesting the bankruptcy court to permit the LAPD to listen to the cassette tapes in the presence of the Trustee or another person appointed by the court. Watson further requested that the court order the LAPD to return the cassette tapes to Watson's attorney after the LAPD finished listening to the cassette tapes. Watson initially stated in his motion that his 1976 waiver was a limited waiver of the attorney/client privilege and only applied to those assisting in the preparation of the book on his life. However, Watson also stated the following:

> 9. I, Charles D. Watson, believe it would be the will of Bill Boyd, and pray the court's will, that the LAPD listens to The Tapes, but not take possession of The Tapes as ordered by the court.

---

> 11. The LAPD, nor anyone else including the Trustee, have information concerning the contents of The Tapes, except the Debtor and myself. In the eyes of justice, I am fully willing for the LAPD to listen to the tapes to satisfy their investigation, but not to take possession, since they are not their property.

On June 13, 2012, the bankruptcy court denied Watson's motion without prejudice "to his ability to pursue his argument that the LAPD should be prevented from disclosing the contents of the recordings to the general public in a non-bankruptcy forum of appropriate jurisdiction."

## LEGAL STANDARD

This court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1) (2006). The court reviews legal conclusions of the bankruptcy court *de novo*. *United States Dep't. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003). The findings of fact made by the bankruptcy court will not be disturbed unless found by the district court to be clearly erroneous. **FED. R. BANKR. P.** 8013. The court reviews

mixed questions of law and fact *de novo*. *In re ASARCO, L.L.C.*, 702 F.3d 250, 257 (5th Cir. 2012) (citation omitted).

### DISCUSSION AND ANALYSIS

After filing his notice of appeal, Watson designated the issues to be decided on appeal. Those issues are as follows:

1. Whether a Chapter 7 trustee is permitted to waive the United States Constitution's Fifth Amendment privileges on behalf of a law firm debtor's client;

2. Whether a non-lawyer Chapter 7 trustee is permitted to file pleadings;

3. Whether the non-lawyer Chapter 7 trustee "has authority to release Debtor law firm, Boyd Veigel, P.C.'s attorney/client privileged information from the law firm client to a third-party who is not a party, creditor, or judgment creditor;" and

4. Whether Watson's rights under the United States Constitution have been violated by the bankruptcy court.

The court notes that with the exception of Watson's arguments concerning the application of the attorney/client privilege to the cassette tapes and the application of the waiver to the same, the remaining arguments presented on appeal were not advanced in the bankruptcy court. Accordingly, the court need not address these issues. *In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001) ("'It is well established that [the appellate courts] do not consider arguments or claims not presented to the bankruptcy court.'").

As evidenced by the Contract of Employment, Watson assigned all of his property to the Debtor to pay his legal fees. Accordingly, the cassette tapes are the Debtor's property. Since the cassette tapes constitute property of the bankruptcy estate which can be "used" by the Trustee, the bankruptcy court was within its discretion to approve the turn over of the cassette tapes to the LAPD. *See* 11 U.S.C. § 363(b).

The issue then becomes whether the cassette tapes are protected by the attorney/client privilege. As noted by the bankruptcy court, the party asserting the attorney/client privilege bears the burden of demonstrating its applicability. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). The party asserting a privilege also bears the burden of demonstrating that the privilege has not been waived. *James v. Harris County*, 237 F.R.D. 606, 609 (S.D. Tex. 2006). Here, the evidence established that Watson executed a written "Waiver of Attorney-Client Privilege" with respect to the cassette tapes. The evidence further revealed that the cassette tapes were disclosed to Chaplain Hoekstra for the purpose of writing a book about Watson's life. The evidence also showed that the cassette tapes were sold to Chaplain Hoekstra for $49,000 which paid a portion of Watson's legal fees. Based on the evidence presented to the bankruptcy court, the court finds that Watson waived his attorney/client privilege when the cassette tapes were sold to Chaplain Hoekstra. "When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the [attorney/client] privilege." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999). Finally, the court notes that if any question existed with respect to Watson's waiver of the attorney/client privilege, the court need look no further than Watson's *pro se* motion to find the answer. Watson clearly states that he has no objection to the LAPD listening to the contents of the cassette tapes. Such statement alone constitutes a waiver of the attorney/client privilege.

## CONCLUSION

Based on the foregoing and having applied the appropriate standards of review, the court hereby **AFFIRMS** the holdings of the bankruptcy court.

IT IS SO ORDERED.

**SIGNED this the 24th day of March, 2013.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE